UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> NICHOLAS J. FIORILLO <br><br> Debtor | Chapter 7 <br> Case No. 10-44179-MSH |
| OASIS, INC., JOHN L. SOUSA, JOHN C. FISHER <br><br> Plaintiffs <br><br> v. <br><br> NICHOLAS J. FIORILLO <br><br> Defendant | Adversary Proceeding <br> No. 11-04001 |

**MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The plaintiffs in this adversary proceeding, Oasis, Inc., John L. Sousa and John C. Fisher, have moved for summary judgment on a single count complaint in which they seek to exclude a debt owed to them by Nicholas J. Fiorillo, the debtor in the main case and the defendant in this adversary proceeding, from Mr. Fiorillo's bankruptcy discharge. Mr. Fiorillo opposes summary judgment. For the reasons explained below, I will deny the plaintiffs' motion and afford the parties the opportunity to address why summary judgment should not enter in favor of Mr. Fiorillo.

1

**Facts**

The material facts are not in dispute and are taken from those allegations in the complaint and plaintiffs' statement of undisputed facts which Mr. Fiorillo admits are true and from the decision of the Worcester County Superior Court in *Fiorillo v. Oasis, Inc.*, No. 992455, 26 Mass. L. Rptr. 116, 2009 WL 3086016 (Mass. Super. Ct. Aug 1, 2009) (the "Worcester Superior Court Suit").

In December 1999, Mr. Fiorillo initiated the Worcester Superior Court Suit against Oasis, Messrs. Sousa and Fisher and others, asserting an ownership interest in Oasis[1] and seeking damages for wrongful termination, nonpayment of wages, breach of fiduciary duty and violations of Mass. Gen. Laws ch. 93A as a result of being terminated as an employee of entities owned by Oasis and others.[2] In November 2007, a jury trial took place to adjudicate a single issue—whether a May 1998 release signed by Mr. Fiorillo precluded his asserting the various claims in his complaint.[3] At the trial two conflicting versions of a letter of transmittal of the release were introduced into evidence. One letter required that the release be held in escrow and not delivered to the releasee until the occurrence of a subsequent event (the "Escrow Letter"). The other letter contained no such condition precedent (the "Unconditional Letter").[4] At the trial, Mr. Fiorillo testified that he was aware of the two versions of the transmittal letter but that it was his intention that the release be held in escrow pending the occurrence of a future event (which apparently

---

[1] Statement No. 1 of the Plaintiffs' Statement of Material Undisputed Facts.

[2] *Fiorillo*, 2009 WL 3086016, at *1.

[3] *Id.*

[4] *Id.* at *1-2.

2

never occurred) and that he never authorized the release to be delivered under cover of the Unconditional Letter. At the conclusion of the trial, the jury was asked one question: "Was there a condition precedent which was not fulfilled and which had to be met before the release could be enforced?" The jury, presumably relying on the Escrow Letter, answered the question in the affirmative.[5]

Thereafter, the superior court granted the defendants' motion for an evidentiary hearing to determine whether the Escrow Letter was a forgery. In a memorandum of decision dated August 1, 2009, the court found that it was.

> I find that [the Escrow Letter] is a fabricated counterfeit document…. I find that Fiorillo did have access to the legal files regarding this matter and, specifically, that he had access to the documents eventually marked as exhibits at trial, or copies thereof.
>
> While I cannot make a finding that Fiorillo was the person who fabricated [the Escrow Letter], I note that the counterfeit document was presented by his counsel at trial and was used to bolster Fiorillo's contention that there was an unfulfilled condition precedent to the release becoming effective. I find that Fiorillo did have access to his legal files and that he himself submitted a motion to this court which attached some of the documents which became exhibits at trial.
>
> I find that [the Escrow Letter] was a key document which may well have led the jury to the verdict it reached. At trial, Fiorillo testified that [the Escrow Letter] was the letter which he authorized [his attorney] to send along with the release. Given my finding that [the Escrow Letter] was a fraudulent document, I find Fiorillo's testimony with regard to that document was not truthful.

*Fiorillo*, 2009 WL 3086016, at *6-7.

As a sanction for Mr. Fiorillo's conduct, the court dismissed the Worcester Superior Court Suit with prejudice. The court also ordered Mr. Fiorillo to reimburse the defendants for

---

[5] *Id.* at *3.

3

certain fees and costs.[6] On August 31, 2010, the superior court issued an execution against Mr. Fiorillo in the amount of $36,728.27 in connection with the award of fees and costs.[7]

On August 23, 2010, Mr. Fiorillo filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. On October 7, 2010, the case was converted to one under chapter 7.

On January 3, 2011, Oasis and Messrs. Sousa and Fisher filed their complaint alleging that the costs and fees awarded to them by the state court constitute a debt that should be excepted from Mr. Fiorillo's discharge by Bankruptcy Code § 523(a)(2) because the state court's award of fees and costs was "due to actual fraud perpetrated by Debtor Fiorillo on the trial court" and because "the execution was issued as a result of Fiorillo's use of a written statement that was materially false."

## Jurisdiction

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper pursuant to 28 U.S.C. § 1409, because this proceeding is brought in the district where the bankruptcy case is pending.

## Positions of the Parties

The plaintiffs allege that the execution issued by the state court was a sanction against Mr. Fiorillo. Citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998), and *Sharfarz v. Goguen (In re Goguen),* 691 F.3d 62 (1st Cir. 2012), they maintain that it would "completely contradict the spirit of the Bankruptcy Code for the Court to afford bankruptcy protection to a debtor

---

[6] *Id.* at *3 and *5.

[7] Complaint at ¶ 28.

4

sanctioned by a different court for committing fraud on that court." They assert that the debt for fees and costs arises as a direct result of Mr. Fiorillo's misrepresentation by introducing the fabricated Escrow Letter into evidence at trial in the Worcester Superior Court Suit. Relying upon the doctrine of collateral estoppel, they argue that I am bound to find that the debt imposed on Mr. Fiorillo by the state court is non-dischargeable under Bankruptcy Code § 523(a)(2)(A), as having arisen through actual fraud.

Mr. Fiorillo opposes summary judgment claiming that the debt is not the type to which § 523(a)(2)(A) applies. He disputes that the award of fees and costs is a non-dischargeable sanction, claiming that he was not sanctioned for intending to commit a fraud by the introduction of the Forged Escrow Letter because the superior court could not find that he was the source of the forgery. Additionally, even if the award of fees and cost was a sanction, Mr. Fiorillo asserts that it is not owed to a governmental or quasi-governmental entity and thus is dischargeable. Finally, he notes that because the superior court did not find him responsible for fabricating the forged Escrow Letter, even if I were to conclude that the debt in question is one to which § 523(a)(2)(A) applies, the plaintiffs must still prove at trial that Mr. Fiorillo was the author of the counterfeit letter.

**Discussion**

Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). A "genuine" issue is one supported by such evidence that "a reasonable

5

jury, drawing favorable inferences," could resolve in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 427 (1st Cir. 1996)). "Material" means that a disputed fact has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. Nw. Airlines, Inc.* 56 F.3d 313, 314–15 (1st Cir. 1995). The moving party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir. 1997).

In addition to the foregoing, after giving the parties "notice and a reasonable time to respond," a court may grant summary judgment in favor of the nonmovant. Fed. R. Civ. P. 56(f)(1), made applicable by Fed. R. Bankr. P. 7056. The notice required by Rule 56(f)(1) need not be a formal notice issued by the court, *Johnson v. State Farm*, C.A. 12-00534-N, 2013 WL 3818707, at *2 (S.D. Ala. July 23, 2013), however, the moving party must have full and fair notice that he is in danger of having judgment enter against him. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* 193 F.3d 109, 115 (2d Cir. 1999).

6

Section 523(a)(2)

Bankruptcy Code § 523(a)(2) excepts from discharge a debt of an individual debtor "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, [or] "(B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive…."[8] The exceptions to discharge of a debt set forth in § 523(a) must be "narrowly construed ... and the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 32 (1st Cir. 2001) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994)). The claimant's burden of proof is to establish the exception to discharge by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The prototypical §523(a)(2)(A) claim is one where a party, in reliance on a debtor's

---

[8] The complaint does not specify which subpart of Bankruptcy Code § 523(a)(2) the plaintiffs assert is applicable. The complaint's allegation that "[t]he execution issued as a result of Fiorillo's use of a written statement that was materially false" suggests that the plaintiffs rely on § 523(a)(2)(B) while their allegations of actual fraud suggest § 523(a)(2)(A). Indeed, their memorandum in support of summary judgment and their reply to Mr. Fiorillo's opposition confine their arguments to § 523(a)(2)(A). Even if the complaint can be read to assert a § 523(a)(2)(B) claim, it must fail. Section 523(a)(2)(B)(ii) requires that the false written statement concern the debtor's financial condition. The Escrow Letter had nothing to do with Mr. Fiorillo's financial condition.

7

misrepresentation or fraud, is induced to enter into a transaction with the debtor and that transaction gives rise to a monetary obligation on the debtor's part. The predicate to §523(a)(2)(A) is that the debtor's debt be for "money, property, services or an extension, renewal or refinancing of credit *obtained by*", among other things, fraud. (Emphasis added). The phrase "obtained by" obviously refers to the debtor's obtaining while the phrase "money, property, services or an extension, renewal or refinancing of credit" refers to what the debtor obtains from the creditor who asserts the existence of fraud.

In this case, while the plaintiffs may have advanced money, property or services in the form legal services, fees or costs in the Worcester Superior Court Suit, those advances were not in any way *obtained by* Mr. Fiorillo, fraudulently or otherwise. Mr. Fiorillo's obligation to pay plaintiffs' fees and costs was not part of a transaction between Mr. Fiorillo and the plaintiffs but rather due to the intervention of the state court. The state court found that Mr. Fiorillo had perpetrated a fraud on the court and as a sanction dismissed Mr. Fiorillo's complaint and assessed against him plaintiffs' fees and costs, ordering that payment be made to the plaintiffs.

The mere fact that plaintiffs were the beneficiaries of the state court's monetary sanction and that the sanction arose as a result of Mr. Fiorillo's fraud on the court, does not make the monetary sanction non-dischargeable under §523(a)(2). Mr. Fiorillo did not obtain anything from plaintiffs by false pretenses, a false representation or actual fraud. What he obtained was a tainted jury verdict.

In *Cohen v. de la Cruz* the United States Supreme Court decided an issue over which the lower courts were in sharp disagreement—whether §523(a)(2)(A) made non-dischargeable not just a debt arising from fraud but also court-ordered punitive damages, attorneys' fees and costs

8

that were added to that debt. The unanimous Court adopted an expansive application of § 523(a)(2)(A) concluding that:

> "any debt…for money, property, services, or…credit, to the extent obtained by" fraud encompasses any liability arising from money, property, *etc.*, that is fraudulently obtained, including treble damages, attorney's fees and other relief that may exceed the value obtained by the debtor.

*Cohen*, 523 U.S. at 218-19, 118 S. Ct. at 1216. The Court arrived at its holding after intensively parsing the statutory text and concluding that it should be read as follows:

> "[T]o the extent obtained by" modifies "money, property, services, or ... credit"—not "any debt"—so that the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

*Id.* at 218-19, 118 S.Ct. at 1216.

It is, therefore, a predicate to any claim for §523(a)(2)(A) non-dischargeability that "specific money or property has been obtained by fraud." *Id.* Here, while Mr. Fiorillo incurred a debt through his fraud, that debt did not arise out of his obtaining money, property or services. It arose by reason of his perpetrating a fraud on the state court. Under the Supreme Court's interpretation of §523(a)(2)(A), Mr. Fiorillo's debt to the plaintiffs would not be subject to a claim of non-dischargeability under that statute.

While a liability like Mr. Fiorillo's would seem to be a good candidate for non-dischargeability, I am constrained by what Congress has legislated in Bankruptcy Code §523(a). Section 523(a) contains an ever-increasing list of debts that may be excluded from a debtor's general discharge in bankruptcy. Under the Bankruptcy Act of 1898, only four categories of debt

9

were excluded from discharge: taxes (Bankruptcy Act § 17a(1)); "judgments for fraud, for obtaining property by false pretenses or false representations, or for willful and malicious injury to property of another" (Bankruptcy Act § 17a(2)); certain unscheduled debts (Bankruptcy Act § 17a(3)); and "debts created by fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in a fiduciary capacity" (Bankruptcy Act § 17a(4)). *See* Collier On Bankruptcy, ¶ 523.LH [2], p. 523-144 (16th ed. 2011). When the Bankruptcy Code was enacted in 1978, the list totaled nine, essentially the equivalent of current § 523(a)(1) through (8) and (10). *Id.* Today, by my count, it totals 24.[9]

      A cursory review of the list of 24 confirms that Congress knew how to exclude from discharge court-ordered payments. *See,* e.g., § 523(a)(11) (judgments for fraud while acting in a fiduciary capacity with respect to a depository institution or insured credit union); § 523(a)(3) (restitution orders under title 18 of the U.S. Code); and § 523(a)(15) (awards to a spouse under a divorce decree). Unfortunately for plaintiffs a court-ordered sanction of the kind owed by Mr. Fiorillo simply does not fit within any of the multitude of categories decreed by Congress as non-dischargeable in § 523(a).

---

[9] Subsections 8, 14, 18 and 19 contain multiple categories of non-dischargeable debt.

**Conclusion**

Plaintiffs' motion for summary judgment will be denied. A separate order to that effect shall enter. Further, an order shall enter pursuant to Rule 7056(f) establishing a deadline for the parties to file submissions as to why summary judgment should not enter in favor or Mr. Fiorillo.

At Worcester, Massachusetts this 31st day of October, 2014.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Roy A. Bourgeois, Esq.
Bourgeois White LLP
Worcester, MA
for the plaintiffs

James P. Ehrhard, Esq.
Ehrhard & Assoc., P.C.
Worcester, MA
for Nicholas J. Fiorillo