**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | |
|---|---|
| In re:<br><br>NICHOLAS J. FIORILLO<br><br>Debtor | Chapter 7<br>Case No. 10-44179-MSH |
| OASIS, INC., JOHN L. SOUSA AND JOHN C. FISHER<br><br>Plaintiffs<br><br>v.<br><br>NICHOLAS J. FIORILLO<br><br>Defendant | Adversary Proceeding<br>No. 11-4001 |

**MEMORANDUM REGARDING DEFENDANT'S ENTITLEMENT TO SUMMARY JUDGMENT**

By their complaint in this adversary proceeding the plaintiffs, Oasis, Inc., John L. Sousa, and John C. Fisher, seek a judgment determining that their monetary claim against the defendant and debtor in the main case, Nicholas J. Fiorillo, should be excepted from Mr. Fiorillo's bankruptcy discharge by application of Bankruptcy Code § 523(a)(2)(A) (11 U.S.C. § 523(a)(2)(A). Their claim arose as a result of a sanction in a prior state court lawsuit in which Mr. Fiorillo was ordered to pay the plaintiffs, who were defendants in that action, their attorneys' fees and costs as a result of Mr. Fiorillo's perpetrating a fraud on the court. On October 31, 2014, I issued an order denying the plaintiffs' motion for summary judgment on their complaint. My reasoning is explained in *Oasis, Inc. v. Fiorillo (In re Fiorillo)*, 520 B.R. 355 (Bankr. D. Mass. 2014) ("*Oasis I*"). In light of that ruling I issued a second order on the same day requiring the

plaintiffs to show cause why summary judgment should not enter in favor of Mr. Fiorillo. The plaintiffs as well as the defendant have presented written submissions on this issue and the matter is now ready for determination.

The facts giving rise to this adversary proceeding are fully detailed in *Oasis I*. To summarize, Mr. Fiorillo was ordered to pay the plaintiffs $36,728.27 for their fees and costs in connection with the state court lawsuit because the court found Mr. Fiorillo had given false testimony during a jury trial concerning a key document which turned out to have been forged. The court also overturned the jury's verdict in Mr. Fiorillo's favor on a preliminary question which had been severed from the other issues in the case and dismissed Mr. Fiorillo's state court action.

When Mr. Fiorillo filed his bankruptcy petition in this court he included his indebtedness to the plaintiffs among those debts for which he sought a discharge. The plaintiffs, believing their debt should be excluded from Mr. Fiorillo's discharge, instituted this adversary proceeding. Putting all their eggs in a single basket, the plaintiffs claimed Mr. Fiorillo's debt was non-dischargeable under Bankruptcy Code § 523(a)(2)(A) as a debt "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." Matters came to a head with the denial of the plaintiffs' motion for summary judgment. The reasoning for that denial is best summarized by the following excerpt from the *Oasis I* decision:

> The mere fact that plaintiffs were the beneficiaries of the state court's monetary sanction and that the sanction arose as a result of Mr. Fiorillo's fraud on the court, does not make the monetary sanction non-dischargeable under § 523(a)(2). Mr. Fiorillo did not obtain anything from plaintiffs by false pretenses, a false representation or actual fraud. What he obtained was a tainted jury verdict. . . .
>
> It is, therefore, a predicate to any claim for § 523(a)(2)(A) non-dischargeability that "specific money or property has been obtained by fraud." [*Cohen v. de la Cruz,* 523

> U.S. 218, 218-19 (1998)]. Here, while Mr. Fiorillo incurred a debt through his fraud, that debt did not arise out of his obtaining money, property or services. It arose by reason of his perpetrating a fraud on the state court. Under the Supreme Court's interpretation of § 523(a)(2)(A), [in *Cohen*] Mr. Fiorillo's debt to the plaintiffs would not be subject to a claim of non-dischargeability under the statute.

*Oasis I* at 359-60. (citing *Cohen v. de la Cruz,* 523 U.S. 218, 218-19 (1998)).

Having denied the plaintiffs' motion for summary judgment, I issued an order directing the plaintiffs to show cause why summary judgment should not enter in favor of Mr. Fiorillo. The plaintiffs present three reasons why they think this would be ill-advised. The first is that my prior ruling denying them summary judgment was simply wrong. The second is that notwithstanding my prior ruling, I cannot grant summary judgment in favor of Mr. Fiorillo because there are material facts in dispute that can only be determined after a trial. Finally, they suggest that even if Mr. Fiorillo's debt is not excludable from discharge by Bankruptcy Code § 523(a)(2)(A), it surely would be by either § 523(a)(6) or § 523(a)(7).

Taking the plaintiffs' second argument first, while they assert the existence of genuine issues of material fact in dispute, they fail to identify a single one. Try as I might, I do not see any. The reason for the denial of the plaintiffs' motion for summary judgment was not the existence of any factual disputes but because as a matter of law they cannot not prevail on their only asserted cause of action. Different facts would not alter this outcome. Thus the plaintiffs' material fact argument does not justify a denial of summary judgment in defendant's favor.

In their primary argument the plaintiffs say my decision in *Oasis I* is wrong because its application of § 523(a)(2)(A) is excessively narrow. They point to case law establishing that Bankruptcy Code § 523(a)(2)(A) applies even when: (1) the creditor sued the debtor in state court on a theory other than fraud (*McCory v. Spigel* (*In re Spigel)*, 260 F.3d 27, 34 (1st Cir.

2001));[1] (2) the debtor's untruthful statement (or, presumably, his fraudulent conduct) was directed to a third party instead of the creditor (*Stallworth v. McBride (In re McBride)*, 512 B.R. 103, 112-13 (Bankr. D. Mass. 2014));[2] and (3) the money or property obtained by the debtor was obtained not from the creditor directly but from a third party (*Pleasants v. Kendrick (In re Pleasants)* 219 F.3d 372, 375 (4th Cir. 2000); *McBride*, 512 B.R. at 112 ).[3]

These expansive approaches to the application of Bankruptcy Code § 523(a)(2)(A) appear both reasonable and supportable; but they don't change the result reached in *Oasis I.* The Supreme Court could not have been more clear in its instruction on the proper application of §

---

[1] The plaintiffs' citation to *Spigel* is curious. While it is correct that the Court of Appeals for the First Circuit expressed "reservations about the [bankruptcy appellate panel's] analysis and its close attention to the labels describing the legal theories underlying the Superior Court judgment, the First Circuit ultimately concluded that the superior court's judgment that the debtor had engaged in fraud did not establish "a sufficient link" between the debtor's fraud and the creditors' debt. *Spigel*, 260 F.3d at 29, 34..

> The finding of the Rhode Island Superior Court that Spigel engaged in fraudulent conduct is, at most, identical only to the first two elements of the *Palmacci* [*v. Umpierrez*, 121 F.3d 781 (1st Cir. 1997),] test, *i.e.*, that Spigel made a false statement with an intent to deceive. That finding does not demonstrate that the McCrorys' claim arises as a direct result of the debtor's misrepresentations or malice. . .
>
> Because the Superior Court was not asked to find, and did not find, any wrongdoing by Spigel directed at the McCrorys in the creation of his indebtedness to them, its judgment simply does not establish that the claim of the McCrorys is one which arises as a direct result of the debtor's misrepresentations or malice.

*Spigel*, 260 F.3d at 34, 35. (Internal citations and quotation marks omitted).

[2] While the debtor's misrepresentation that he had authority to settle his client's forfeiture action was made to an assistant district attorney, it directly resulted in the debtor's obtaining property that belonged to his client, the creditor.

[3] *Pleasants* and *McBride* both recognize that once a debt for money, property or services is obtained by fraud all liability flowing from that debt will be excepted from discharge. Neither endorses skipping the step requiring that there first be a debt for *something* that a debtor obtained by fraud.

523(a)(2)(A):

> The phrase [“any debt . . . for money, property, services, or . . . credit, to the extent obtained by” fraud] thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a non-dischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, “any debt” arising therefrom is excepted from discharge.

*Cohen,* 523 U.S. at 218-19 (citing § 523(a)(2)(A)).

In *Oasis I* I ruled that there was no money or property of the plaintiffs obtained by Mr. Fiorillo through fraud. The plaintiffs say Mr. Fiorillo initially obtained a jury verdict adverse to them through his fraudulent testimony and that a jury verdict is property. I do not agree. A jury verdict without more has no value, especially the one involved in this case which arose at a bifurcated trial in which the jury was asked to answer a single threshold question: “Was there a condition precedent which was not fulfilled and which had to be met before the release [by Mr. Fiorillo of the plaintiffs] could be enforced?” The jury’s answer in the affirmative merely deprived the plaintiffs of a defense to Mr. Fiorillo’s claims against them in the state court action thereby allowing the state court action to continue. Whatever thing of value belonging to the plaintiffs the jury verdict may have conferred on Mr. Fiorillo, it did not even remotely resemble a property interest. In any event, the jury verdict was overturned by the state court when Mr. Fiorillo’s fraud was discovered.

In *Nunnery v. Roundtree (In re Roundtree)*, 478 F.3d 215, 222 (4th Cir. 2007), the United States Court of Appeals for the Fourth Circuit emphasized the absolute necessity that for § 523(a)(2)(A) to apply the debtor must have obtained something through his fraud. The Fourth Circuit, invoking the Supreme Court’s decision in *Cohen*, observed:

> The key in *Cohen* is that the debtor obtained something through his fraud. The Court requires at the threshold that the debtor gain something: “Once it is established that specific money or property has been obtained by fraud, however, ‘any debt’ arising therefrom is excepted from discharge.” *Id.* The Court clarified its

> holding by stating that subsection (a)(2)(A) "is best read to prohibit the discharge of any liability arising from a debtor's fraudulent *acquisition* of money, property, etc., including an award of treble damages for fraud." *Id.* at 221, 118 S. Ct. 1212 (emphasis added). Admittedly, the Court states several times that the subsection "bars the discharge of *all* liability arising from fraud," but in each example the Court uses to illustrate its point, the debtor has fraudulently obtained money or property from the creditor. *Id.* at 222, 118 S. Ct. 1212 (emphasis added). Although *Cohen* expands the notion of debt in the context of the fraud exception, it still requires that the debtor have obtained something from the creditor for that debt to qualify for the exception.

*Nunnery*, 478 F.3d at 222.

Having failed to identify any material fact in dispute or to articulate a convincing argument for a change of heart after *Oasis I*, the plaintiffs are brought full circle back to the dilemma confronting them at the outset of this exposition—why should summary judgment not enter in the defendant's favor? At this point they present their third and final reason. Even if Mr. Fiorillo's indebtedness is not dishargeable under § 523(a)(2)(A), the plaintiffs suggest, it surely would be under either § 523(a)(6) or § 523(a)(7).[4]

The obvious problem with the plaintiffs' last-ditch argument is that their complaint sounds exclusively under § 523(a)(2)(A). Now, some four years after filing their complaint, plaintiffs for the first time allude to § 523(a)(6) and (7). A trial court cannot grant relief based on hypotheticals. The actual cause of action plaintiffs have chosen to prosecute consistently throughout this proceeding is the one set forth in their complaint, and on that cause of action they cannot, as a matter of law, prevail.

---

[4] Bankruptcy Code § 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." Section 523(a)(7) excepts a debt "to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ."

Even were I to consider plaintiffs' belated invocation of § 523(a)(6) and (7) as a deemed motion to amend their complaint (which would be a stretch), I would decline to grant such a motion at this point in the proceeding.

Rule 15(a)(2) of the Federal Rules of Civil Procedure, made applicable to bankruptcy adversary proceedings by Rule 7015 of the Federal Rules of Bankruptcy Procedure, instructs a court to freely grant parties leave to amend pleadings "when justice so requires." The right to amend is not absolute, however. The Supreme Court endorses denying a motion to amend in circumstances involving "undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). A number of these factors exist here.

Plaintiffs initiated this adversary proceeding on January 3, 2011, the last day of the statutory period for creditors to file complaints seeking judgments of non-dischargeability. The proceeding was stayed while Mr. Fiorillo prosecuted an appeal of an unrelated matter in the main case which, if successful, would have resulted in the dismissal of the main case and eliminated the need for plaintiffs to pursue this non-dischargeability proceeding. The appeal was concluded adversely to Mr. Fiorillo in January 2012. At that point, rather than seek the lifting of the stay of this proceeding in order to prosecute their claims, however, plaintiffs did nothing. This proceeding remained inactive for another year until on January 3, 2013, the court issued an order requiring the parties to show cause why this proceeding should not be dismissed for failure to prosecute. This seemed to get the plaintiffs' attention triggering a brief spurt of activity as a result of which the show cause order was released and the proceeding was allowed to continue. Apparently not fully awakened from their slumber, plaintiffs slipped back into somnolence. This resulted, on May 30, 2013, in the issuance of another order to show cause, this time as to why the

proceeding should not be dismissed for failure to file, along with Mr. Fiorillo (who of course has no incentive to behave proactively in this matter), the required certification of a discovery conference under Federal Rule Civil Procedure 26. The second order to show cause did the trick. The parties filed a joint discovery plan which was approved on June 13, 2013. Under that plan they agreed that all discovery, including expert discovery, would be completed by December 21, 2013. They also agreed that "except for good cause shown, no motions seeking to add new parties or to amend the pleadings to assert new claims or defenses may be filed after July 15, 2013." A trial date was scheduled for April 4, 2014. On March 13, 2014, the parties filed a joint motion to postpone the trial and amend the prior pre-trial schedule because they needed more time to complete discovery. That motion was granted. This led to plaintiffs' filing their motion for summary judgment on April 28, 2014, which resulted in the *Oasis I* decision.

After four years of pending litigation, three of them active, in which plaintiffs' conduct can be characterized, at best, as reactive and, at worst, catatonic, it would be unjust indeed to allow plaintiffs to amend their complaint as they now suggest. Furthermore, plaintiffs agreed to the entry of an order making July 15, 2013, the deadline for filing motions to amend the pleadings to assert new claims in this proceeding. True, that deadline could be extended for good cause, but it is inconceivable that good cause could be established to justify allowing plaintiffs to amend their complaint to abandon their sole cause of action in favor of two new ones which were fully available to them from day one of this adversary proceeding. As a matter of fact, the Fourth Circuit's *Roundtree* decision, discussed above, decided years before plaintiffs filed their complaint, announces loudly and clearly that in a case where a debtor committed fraud but did not acquire money or property as a result, the proper cause of action under Bankruptcy Code § 523 is not under subsection (a)(2)(A) but (a)(6). *Roundtree*, 478 F.3d at 222 ("§ 523(a)(6)

provides the more appropriate avenue for creditors damaged by the fraud of debtors who obtain nothing from their actions.")[5]

Thus the three-legged platform upon which the plaintiffs have attempted to support their argument for denying summary judgment to the defendant is legless. Like Wile E. Coyote suspended for a split second in thin air after overrunning solid ground, the plaintiffs' platform must inevitably plummet.

---

[5] There is an additional reason for denial as to the plaintiffs' request to amend their complaint to add a count under § 523(a)(7). That reason is futility. Section 523(a)(7) requires that the "fine, penalty or forfeiture" must be "payable to *and* for the benefit of a governmental unit . . . . ." (Emphasis added). *Hughes v. Sanders*, 204CV744, 2005 WL 1490534, at *5 (S.D. Ohio June 23, 2005); *Tipsey McStumbles v. Griffin (In re Griffin)*, 491 B.R. 602 (Bankr. S.D. Ga. 2013); *Jeff-Mark Prtnshp. v. Friedman (In re Friedman)*, 253 B.R. 576 (Bankr. S.D. Fla. 2000); *Commercial Bankers Life Ins. Co. v. Strutz (In re Strutz)*, 154 B.R. 508, 510 (Bankr. N.D. Ind. 1993). Here the superior court's award was not payable to a governmental unit but to the plaintiffs.

Additionally, as the superior court's decision makes clear, its award of costs and fees to the plaintiffs was for a pecuniary loss, namely to *reimburse* it for expert witness costs and legal fees and costs it incurred. Compensation for a monetary injury is the essence of a "pecuniary loss" and should therefore be dischargeable. *Caggiano v. Office of the Parking Clerk for the City of Boston (In re Caggiano)*, 34 B.R. 449, 450 (Bankr. D. Mass. 1983). The dismissal of the case with prejudice was the sanction upholding the integrity of the court.

For these reasons amending their complaint to add a count under § 523(a)(7) would be an exercise in futility as relief under that provision of the Bankruptcy Code would be unavailable to the plaintiffs.

A separate order shall enter granting summary judgment to the defendant, Nicholas J. Fiorillo.

At Worcester, Massachusetts this 20th day of April, 2015.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing: Roy Bourgeois, Esq.
BourgeoisWhite, LLP
Worcester, MA
for the plaintiffs, Oasis, Inc., John L. Sousa and John C. Fisher

James P. Ehrhard, Esq.
Ehrhard & Associates, P.C.
Worcester, MA
for the defendant, Nicholas J. Fiorillo